Walter L. **HARLING**, Appellant

v.

**UNITED STATES** of America, Appellee.

No. 15909.

United States Court of Appeals District of Columbia Circuit.

Argued June 20, 1961.

Decided July 6, 1961.

Mr. Ernest C. Raskauskas, Washington, D. C. (appointed by the District Court), for appellant.

Mr. Donald S. Smith, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., at the time the brief was filed, and Mr. Carl W. Belcher, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, EDGERTON, PRETTYMAN, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting *in banc*.

BAZELON, Circuit Judge.

We here review convictions for assault with a dangerous weapon [1] and robbery.[2] The principal question concerns the admissibility of testimony by Government witnesses of damaging oral statements made by appellant while in police custody when he was seventeen years old and before the Juvenile Court had waived its "original and exclusive jurisdiction." D. C.Code, § 11–907.

The police took appellant into custody on the evening of February 21, 1960, and placed him in a line-up where he was identified by a store clerk as one of two persons who had robbed the store and as the one who had stabbed him. Appellant was taken to the Receiving Home for

---

1. D.C.Code, § 22–502.

2. D.C.Code, § 22–2901.

Children where he spent the night. The next morning he was taken to the Robbery Squad office for questioning. At about 3:00 that afternoon, the store owner identified him as one of the robbers and the assailant of the clerk. Appellant was thereupon returned to the Receiving Home to await hearing before the Juvenile Court. Two weeks later that court, acting under § 11–914, D.C.Code,[3] waived its jurisdiction and ordered appellant held for trial "under the regular procedure" for adults in the United States District Court.

At trial, the store owner testified, without objection, that when she identified appellant—which identification was made, as we have said, at the Robbery Squad office and in the presence of police officers —he admitted that he had taken part in the robbery, but he denied that he had stabbed the store clerk. Thereafter, a police detective testified that appellant had made similar statements to him in questioning earlier that day. Court-appointed defense counsel objected to the detective's testimony on the ground "that you cannot use a statement taken from a witness who has been under arrest and not taken to an arraigning magistrate during that interval, from 10:30 that night until 10:30 the following morning [at which time appellant made the admissions to the detective.]" In

ruling upon the objection, the court stated: " * * * I would say that the time interval is not unreasonable. * * * But, in any event, the whole rule [Rule 5 and the Mallory doctrine] does not apply to juveniles, so the objection is overruled."[4]

In Pee v. United States, 1959, 107 U.S.App.D.C. 47, 274 F.2d 556, we held that the District Court in an adult proceeding erred in failing to apply the Federal Rules and the Mallory case[5] to admissions of a child made before the Juvenile Court waived its jurisdiction. The fundamental approach of the Pee case is that in the District Court proceeding the Federal Rules must be observed. We adhere to this principle.

The difficulty, however, lies in the practical problem of applying Rule 5 and Mallory to inculpatory statements made by the child before the Juvenile Court waived its jurisdiction.[6] In attempting to resolve this problem in Pee, we "set aside the adjudication and sentence (but not the verdict) in order to remand the case with directions to the District Court to hold a hearing upon the question whether the Mallory case required that the statements * * * [of Pee and his co-defendants] be held inadmissible,"[7] and to grant a new trial only if that were found. This disposition contemplated that the pre-waiver statements made by

3. This section provides:
   "If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such other court may exercise the powers conferred upon the juvenile court in this Act in conducting and disposing of such cases."

4. Since there was no hearing on the admissibility of the admissions, the record shows only the time at which appellant was apprehended and the time at which the inculpatory statements were made. But it is clear that at least two weeks

elapsed after appellant's arrest before he was taken before a committing magistrate.

5. Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

6. In State v. Smith, 1960, 32 N.J. 501, 545, 161 A.2d 520, 543, the court stated that pre-waiver statements by a child were admissible in subsequent adult criminal proceedings notwithstanding the absence of a preliminary hearing or examination as required in criminal cases under its Rule 3:2-3. It is unnecessary to comment on that view since that case is distinguishable on the ground that New Jersey courts do not follow the McNabb-Mallory exclusionary doctrine of the Federal courts. State v. Pierce, 1950, 4 N.J. 252, 72 A.2d 305.

7. 107 U.S.App.D.C. at page 52, 274 F.2d at page 561.

Pee and his co-defendants might thereafter be admissible in regular District Court proceedings upon a showing that the statements were made before the advent of what would have constituted "unnecessary delay" under Rule 5 if that rule had been applicable. However, we now conclude upon further consideration that they would not be admissible upon such showing. We state our reasons.

■■ Pee makes plain that from the moment a child commits an offense, "in effect he is exempt from the criminal law" [8] unless and until the Juvenile Court waives its jurisdiction.[9] During that period the juvenile rules govern; they allow detention for five days without a judicial hearing. It is Rule 5 of the Federal Rules of Criminal Procedure which requires a preliminary hearing "without unnecessary delay," but those rules do not apply in juvenile proceedings. In these circumstances the question whether Rule 5, if it had been ap-

plicable, would have been violated, is an irrelevant question.[10]

■ It is, of course, because children are, generally speaking, exempt from criminal penalties that safeguards of the criminal law, such as Rule 5 and the exclusionary Mallory rule, have no general application in juvenile proceedings. Aside from the requirements of expressly applicable statutes, the principles of "fundamental fairness" govern in fashioning procedures and remedies to serve the best interests of the child.[11] It would offend these principles to allow admissions made by the child in the non-criminal and non-punitive setting of juvenile proceedings to be used later for the purpose of securing his criminal conviction and punishment. Such a practice would be tantamount to a breach of faith with the child, since he cannot be charged with knowledge of either his privilege against self-incrimination or the Juvenile Court's power to waive its jurisdiction and subject him to criminal penalties.[12]

---

8. Pee v. United States, 107 U.S.App.D.C. at page 49, 274 F.2d at page 358.

9. He may even be exempt thereafter if the District Court decides that "the *parens patriae* plan [of the Juvenile Court] should be applicable to him." 107 U.S. App.D.C. at page 51, 274 F.2d at page 560.

10. The Government concedes in its supplemental brief that in these circumstances a hearing to determine the "retroactive application of Rule 5 [is] unsound."

11. Pee v. United States, 1959, 107 U.S. App.D.C. 47, 274 F.2d 556; United States v. Dickerson, 1959, 106 U.S.App.D.C. 221, 271 F.2d 487; Shioutakon v. District of Columbia, 1956, 98 U.S.App.D.C. 371, 236 F.2d 666, 60 A.L.R.2d 686.

12. In this connection we note the statement of the authoritative Standards for Specialized Courts Dealing with Children (Children's Bureau, Department of Health, Education and Welfare, 1954), at pp. 38–39:

"Because of the child's presumed immaturity, special safeguards should be thrown around a police officer's interview with a child in investigating a delinquent act. In certain situations, depending on the age of the child, and the act committed, waiver to criminal court may be a

possibility. Moreover, at the time of the interview, it is not known whether or not the court specializing in children's cases will retain jurisdiction over the case if a petition is filed, or will waive its jurisdiction and permit the child to be tried in a criminal court. Therefore, it cannot always be assumed that the police interview will lead only to a noncriminal proceeding.

"Before being interviewed, the child and his parents should be informed of his right to have legal counsel present and to refuse to answer questions if he should so decide. In cases where waiver is possible, he should also be cautioned that if he answers, his answers may be used not only before the specialized court but possibly in a criminal court. Where a child has been questioned alone by a police officer, without having been given an opportunity to secure the presence of his parents, guardian, or counsel, his statement during such interview should be presumed to have been induced either by the child's immaturity or by the idea that they would be used only in the specialized court and they should, therefore, unless the presumption is overcome, be excluded from admission before a criminal court in which the child may be a defendant.

"Whenever possible and especially in the case of young children, no child should

Moreover, if admissions obtained in juvenile proceedings *before* waiver of jurisdiction may be introduced in an adult proceeding *after* waiver, the juvenile proceedings are made to serve as an adjunct to and part of the adult criminal process. This would destroy the Juvenile Court's *parens patriae* relation to the child and would violate the non-criminal philosophy which underlies the Juvenile Court Act.

■■ In United States v. Dickerson, 1959, 106 U.S.App.D.C. 221, 225, 271 F.2d 487, 491, we strongly intimated that any "departure in practice from that philosophy would require the application of procedural safeguards observed in criminal proceedings." These strict safeguards, however, are wholly inappropriate for the flexible and informal procedures of the Juvenile Court which are essential to its *parens patriae* function. To avoid impairment of this function, the juvenile proceeding must be insulated from the adult proceeding. This requires that admissions by a juvenile in connection with the non-criminal proceeding be excluded from evidence in the criminal proceeding. We hold this requirement applicable in this case and in all similar cases in the future.[13] This application requires reversal of the conviction under review and a remand to the District Court for a new trial.[14]

Whether spontaneous statements by a juvenile not in connection with nor in the course of any official interrogation or inquiry would be admissible in the adult proceeding is not before us. Nor are we concerned here with the admissibility in the Juvenile Court proceeding of statements made subsequent to apprehension. Accordingly, we intimate no views on these matters.

Exclusion of appellant's statement does not bar the criminal proceeding itself. And if the prosecutor decides that without the statement he cannot make a successful case, he can ask the District Court to "exercise the powers conferred upon the juvenile court in this Act in conducting and disposing" of the case. See § 11–914, supra, note 3. Or, perhaps, he could request the Juvenile Court to reconsider and rescind its order waiving jurisdiction.[15] In either event, appellant would still be subject to the very considerable means for dealing with juveniles provided by the Juvenile Court Act. Thus the essential scheme of the Juvenile Court Act is intact. We should bear in mind that it is implicit in that scheme that non-criminal treatment is to be the

be interviewed except in the presence of his parents or guardian. This should always be the policy when a child is being questioned about his participation or when a formal statement concerning the child's participation in the alleged delinquent act is being taken. * * *"

See also Paulsen, Fairness to the Juvenile Offender, 41 Minn.L.Rev. 547, 561–62 (1947), although dealing solely with admissions made in juvenile court itself. Of course, the problem is accentuated in cases, such as this one, where the admissions are extra-judicial, entirely unenvironed by any court protections. Moreover, we do not believe that the question of admissibility of the child's statements as evidence against him in the District Court should vary from case to case depending on criteria which could at best only partially indicate the child's capacity to waive his rights.

13. Judge Edgerton, Judge Fahy and the writer, however, are of the view that our holding should not be limited to prospective application.

14. Although testimony of appellant's admissions was not the sole evidence incriminating appellant, the Government recognizes (Government's brief p. 9, note 5): "It could be argued that the introduction of an inculpatory statement is prejudicial since it tends to prove his guilt." The evidence of appellant's participation in both the robbery and the stabbing was sharply disputed; both he and his alleged accomplice, called as a defense witness, testified that appellant was merely an innocent bystander who had no advance knowledge of the other boy's intention to rob and took no part in the action itself. We think the testimony regarding appellant's admissions must be regarded as highly prejudicial. Although there was no objection to the store owner's testimony, we deem it "plain error affecting substantial rights." Rule 52(b), Fed.R.Crim.P., 18 U.S.C.A.

15. See also § 11–913, D.C.Code (1951).

rule—and the adult criminal treatment, the exception which must be governed by the particular factors of individual cases.[16]

Reversed.

WILBUR K. MILLER, Chief Judge, dissents.

16. See, for example, Juvenile Court Policy Memorandum No. 7, "Waiver of Jurisdiction" (Mimeograph, Nov. 30, 1959), outlining the factors which are to govern waiver.