Cecil R. RIDDICK, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 17757.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 22, 1963.

Decided Nov. 21, 1963.

---

Mr. John D. Matthews, Washington, D. C., with whom Mr. Daniel M. Redmond, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. Gerald A. Messerman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and WILBUR K. MILLER and MC-GOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

Reversal of a conviction for robbery is sought on this appeal because of alleged error in the admission into evidence of certain statements by appellant at the time he was arrested in the midst of the events constituting the crime. We have concluded to affirm.

The complaining witness, a young woman, was walking home through Grant Circle late at night. She testified that appellant and another man approached her; that the latter seized her by the neck and threw her to the ground; and that, while she was resisting, appellant seized her purse and ran. Officer Guthrie, of the Police Department, testified that he was on foot patrol in the area, heard the girl's cry for help, ran to the Circle, and met appellant running toward him with a purse in his hand. Ordered to halt, appellant first simply changed the direction of his flight, but, upon further pursuit, threw the purse into the air and stopped.

This was the Government's direct case. While cross-examining the police officer, defense counsel asked him to relate what appellant had said to him at the time of the arrest. The prosecution then indicated in a bench conference that it had not gone into this because appellant was a juvenile,[1] but defense counsel indicated a wish to press the questions because he expected the answers to be helpful to the defense. He was permitted to proceed, and desisted only when the officer said he was unable to answer in the terms proposed, that is to say, he could not give a yes-or-no answer to a question inquiring as to whether appellant had explained his possession of the purse at the time of his arrest.

Appellant testified in his own defense. His story was that, while walking through Grant Circle with a friend, he was surprised when the friend suddenly attacked a woman; that appellant ran immediately from the scene, losing his hat in the process; that, in going back to get his hat, he met his friend who was holding both the hat and the purse; and that, in thinking to take the hat from his friend, he took the purse just as the police officer was arriving on the scene.

On cross-examination, the Government asked appellant what he said to the officer at the time of the arrest. The District Court first expressed some doubt about this inquiry, but let it proceed when defense counsel clearly stated on the record that he did not object, provided the answer was limited to statements made

1. See Harling v. United States, 111 U.S. App.D.C. 174, 295 F.2d 161 (1961).

at the time of the arrest. Appellant was then asked if he had not said to the officer, in response to the latter's question, that his (appellant's) share of the $9 in the purse was $4.50; and that he did not know why he had done it (i. e., taken part in the robbery). Appellant denied having said these things. On re-direct examination, defense counsel asked appellant what he had said to the officer, and the answer was that he had explained to the officer the circumstances of his possession of the purse in the same terms as he had testified to on direct examination.

The officer was called by the Government as a rebuttal witness to testify about the statements made to him by appellant at the time of arrest. He said that this exchange had occurred between appellant and himself:

"A. I asked him what his name was and he told me.

"I asked him who his partner was and he told me Sylvester Gray. I asked him his partner's address and he said he didn't remember it. They were just running together.

"At that time I said, 'Miss Daye,' or 'Miss, how much money do you have in your purse?'

"He told me his age at this point, and she said, 'About $9.'

"I said, 'Your cut would be $4.50, wouldn't it, son?'

"He said, 'Yes.'

"I said, 'Why did you do it?'

"He said, 'I don't know.'"

Officer Guthrie, on this rebuttal, also testified that appellant had not said anything to him on this occasion about not knowing of his friend's purpose to rob or about mistaking the purse for his hat. Defense counsel thereupon recalled appellant as a rebuttal witness and again went into the subject of what appellant had said to the arresting policeman, with results which were, to say the least, equivocal from the defense standpoint.

We are asked to reverse this conviction because of the prejudice to appellant resulting from the admission of appellant's conversation with the police officer at the time of arrest. But it was the defense who first sought to get these conversations into evidence and, when that effort proved abortive by reason of the way in which defense counsel framed his questions, it was made clear that the defense had no objection to another try in this regard by the prosecution. This latter position is not surprising, inasmuch as defense counsel had already indicated that his information was of such a nature as to cause him to believe that these conversations would give credence to appellant's defense. The purpose founded on this information persisted even after seeds of doubt about it must certainly have been implanted—and the trial ends with defense counsel making a final effort to get the conversations before the jury in the version he had presumably been given prior to trial.

In *Harling* we recognized that there are limitations upon the use by the prosecution of admissions obtained from a juvenile by interrogation during police detention prior to waiver of jurisdiction by the Juvenile Court. But we do not read *Harling*, even if it be applicable to the circumstances here involved, as prohibiting the defense from using, or inviting the use, of conversations with the police, which it believes may be helpful in establishing innocence. If its expectations in this regard are not realized, that is surely no ground for reversing the personally disappointing result of conviction. The prejudice here involved may more plausibly be ascribed to prevarication than to procedural shortcomings.

Affirmed.