# HARRISON *v.* UNITED STATES.

No. 876.   Argued April 4, 1968.—Decided June 10, 1968.

*Alfred V. J. Prather,* by appointment of the Court, 389 U. S. 1002, argued the cause and filed briefs for petitioner.

*Francis X. Beytagh, Jr.,* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Vinson,* and *Beatrice Rosenberg.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The petitioner was brought to trial before a jury in the District of Columbia upon a charge of felony murder.[1] At that trial the prosecution introduced three confessions allegedly made by the petitioner while he was in the custody of the police. After these confessions had been admitted in evidence, the petitioner took the witness stand and testified to his own version of the events leading to the victim's death. The jury found the petitioner guilty, but the Court of Appeals reversed his conviction, holding that the petitioner's confessions had been illegally obtained and were therefore inadmissible in evidence against him. *Harrison* v. *United States,* 123 U. S. App. D. C. 230, 238, 359 F. 2d 214, 222; on rehearing *en banc,* 123 U. S. App. D. C. 239, 359 F. 2d 223.[2]

---

[1] An earlier conviction had been vacated on appeal. See n. 4, *infra.*

[2] Two of the confessions were found to have been obtained in violation of *Mallory* v. *United States,* 354 U. S. 449. The third was found to have been obtained in violation of a prior *en banc* decision of the Court of Appeals, *Harling* v. *United States,* 111 U. S. App. D. C. 174, 295 F. 2d 161. See n. 6, *infra.*

The substance of the confessions was that the petitioner and two others, armed with a shotgun, had gone to the victim's house intending to rob him, and that the victim had been killed while resisting their entry into his home. In his testimony at trial the petitioner said that he and his companions had gone to the victim's home hoping to pawn the shotgun, and that the victim was accidentally killed while the petitioner was presenting the gun to him for inspection.

Upon remand, the case again came to trial before a jury. This time the prosecutor did not, of course, offer the alleged confessions in evidence. But he did read to the jury the petitioner's testimony at the prior trial—testimony which placed the petitioner, shotgun in hand, at the scene of the killing. The testimony was read over the objection of defense counsel, who argued that the petitioner had been induced to testify at the former trial only because of the introduction against him of the inadmissible confessions. The petitioner was again convicted, and the Court of Appeals affirmed.[3] We granted certiorari to decide whether the petitioner's trial testimony was the inadmissible fruit of the illegally procured confessions.[4]

---

[3] 128 U. S. App. D. C. 245, 387 F. 2d 203.

[4] 389 U. S. 969. The petitioner's further contention that he was denied the right to a speedy trial is wholly without merit and was properly rejected by the Court of Appeals. See 128 U. S. App. D. C., at 248–250, 387 F. 2d, at 206–208. The petitioner was indicted more than eight years ago and has been tried and convicted three times for the offense here involved. His first conviction was vacated on appeal when it became clear that the man who had represented him in certain post-verdict proceedings was an ex-convict posing as an attorney, see 123 U. S. App. D. C. 230, 232–233, 359 F. 2d 214, 216–217; his second conviction was reversed because the Government employed inadmissible confessions against him on retrial, see 123 U. S. App. D. C. 230, 238, 239, 359 F. 2d 214, 222, 223; and his third conviction is presently before us. Virtually all of the delays of which the petitioner complains occurred in the

In this case we need not and do not question the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings.[5] A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him.

Here, however, the petitioner testified only after the Government had illegally introduced into evidence three confessions, all wrongfully obtained,[6] and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree, to invoke a time-worn metaphor. For the "essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392.[7]

course of appellate proceedings and resulted either from the actions of the petitioner or from the need to assure careful review of an unusually complex case.

[5] See, *e. g., Edmonds* v. *United States,* 106 U. S. App. D. C. 373, 377–378, 273 F. 2d 108, 112–113; *Ayres* v. *United States,* 193 F. 2d 739, 740–741. And see generally C. McCormick, Evidence §§ 131, 230–235, 239 (1954).

[6] In the present posture of this case, the earlier holding of the Court of Appeals that the petitioner's confessions were illegally obtained, see 123 U. S. App. D. C. 230, 238, 239, 359 F. 2d 214, 222, 223, is not in dispute. We therefore proceed upon the assumption that the Court of Appeals was correct in ruling the confessions inadmissible, but we intimate no view upon how we would evaluate that ruling if it were properly before us.

[7] See also *Nardone* v. *United States,* 308 U. S. 338, 341; *Wong Sun* v. *United States,* 371 U. S. 471, 484–488. Cf. *Fahy* v. *Connecticut,*

In concluding that the petitioner's prior testimony could be used against him without regard to the confessions that had been introduced in evidence before he testified, the Court of Appeals relied on the fact that the petitioner had "made a conscious tactical decision to seek acquittal by taking the stand after [his] in-custody statements had been let in . . . ." [8] But that observation is beside the point. The question is not *whether* the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible. [9] As Justice Tobriner wrote for the Supreme Court of California,

> "If the improper use of [a] defendant's extrajudicial confession impelled his testimonial admission of guilt, . . . we could not, in order to shield

---

375 U. S. 85, 91. See also the opinions of Chief Justice Traynor in *People* v. *Jackson,* 67 Cal. 2d 96, 97, 429 P. 2d 600, 603, and *People* v. *Polk,* 63 Cal. 2d 443, 449, 406 P. 2d 641, 644, and the opinions of Justice Tobriner in *People* v. *Spencer,* 66 Cal. 2d 158, 164–169, 424 P. 2d 715, 719–724, and *People* v. *Bilderbach,* 62 Cal. 2d 757, 763–768, 401 P. 2d 921, 924–927.

[8] 128 U. S. App. D. C. 245, 252, 387 F. 2d 203, 210.

[9] We have no occasion in this case to canvass the complex and varied problems that arise when the trial testimony of a witness other than the accused is challenged as "the evidentiary product of the poisoned tree." R. Ruffin, Out on a Limb of the Poisonous Tree: The Tainted Witness, 15 U. C. L. A. Law Rev. 32, 44 (1967). See also Comment, Fruit of the Poisonous Tree—A Plea for Relevant Criteria, 115 U. Pa. L. Rev. 1136, 1143–1153 (1967). Compare *United States* v. *Wade,* 388 U. S. 218, 241; *Gilbert* v. *California,* 388 U. S. 263, 272–273. And, contrary to the suggestion made in a dissenting opinion today, *post,* at 234, we decide here only a case in which the prosecution illegally introduced the defendant's confession in evidence against him at trial in its case-in-chief.

the resulting conviction from reversal, separate what he told the jury on the witness stand from what he confessed to the police during interrogation." [10]

The remaining question is whether the petitioner's trial testimony was in fact impelled by the prosecution's wrongful use of his illegally obtained confessions. It is, of course, difficult to unravel the many considerations that might have led the petitioner to take the witness stand at his former trial. But, having illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would not have testified as he did if his inadmissible confessions had not been used. "The springs of conduct are subtle and varied," Mr. Justice Cardozo once observed. "One who meddles with them must not insist upon too nice a measure of proof that the spring which he released was effective to the exclusion of all

---

[10] *People* v. *Spencer, supra,* 66 Cal. 2d, at 164, 424 P. 2d, at 719–720.

It is argued in dissent that the petitioner's trial testimony should not be suppressed "even if it was in fact induced by the wrongful admission into evidence of an illegal confession," *post,* at 232, since any deterrence such suppression might achieve is insufficient to warrant placing new "obstacles . . . in the path of policeman, prosecutor, and trial judge alike." *Post,* at 235. Of course, no empirical evidence on the deterrence issue is available. And "[s]ince as a practical matter it is never easy to prove a negative, it is hardly likely that conclusive factual data could ever be assembled." *Elkins* v. *United States,* 364 U. S. 206, 218. But it is not deterrence alone that warrants the exclusion of evidence illegally obtained— it is "the imperative of judicial integrity." *Id.,* at 222. The exclusion of an illegally procured confession and of any testimony obtained in its wake deprives the Government of nothing to which it has any lawful claim and creates no impediment to legitimate methods of investigating and prosecuting crime. On the contrary, the exclusion of evidence causally linked to the Government's illegal activity no more than restores the situation that would have prevailed if the Government had itself obeyed the law.

others." [11]    Having "released the spring" by using the petitioner's unlawfully obtained confessions against him, the Government must show that its illegal action did not induce his testimony.[12]

No such showing has been made here.    In his opening statement to the jury, defense counsel announced that the petitioner would not testify in his own behalf.    Only after his confessions had been admitted in evidence did he take the stand.    It thus appears that, but for the use of his confessions, the petitioner might not have testified at all.[13]    But even if the petitioner would have decided to testify whether or not his confessions had been used, it does not follow that he would have admitted being at the scene of the crime and holding the gun when the fatal shot was fired.    On the contrary, the more natural inference is that no testimonial admission so damaging would have been made if the prosecutor had not already

---

[11] *De Cicco* v. *Schweizer*, 221 N. Y. 431, 438, 117 N. E. 807, 810.

[12] See *People* v. *Spencer, supra,* 66 Cal. 2d, at 168, 424 P. 2d, at 722. As MR. JUSTICE HARLAN recently observed, "when the prosecution seeks to use a confession uttered after an earlier one not found to be voluntary, it has . . . the burden of proving . . . that the later confession . . . was not directly produced by the existence of the earlier confession." *Darwin* v. *Connecticut,* 391 U. S. 346, 351 (concurring in part and dissenting in part).    The same principle compels the conclusion that, when the prosecution seeks to use testimony given after the introduction in evidence of a confession unlawfully obtained, it has the burden of proving that the defendant's testimony was not produced by the illegal use of his confession at trial.    Compare *Chapman* v. *California,* 386 U. S. 18, 24: "Certainly error . . . in illegally admitting highly prejudicial evidence . . . casts on someone other than the person prejudiced by it a burden to show that it was harmless."

[13] "In evaluating the possibility that the erroneous introduction of [a] defendant's extrajudicial confession might have induced his subsequent testimonial confession, we must assess [the] defendant's reaction to the use of his confession at trial on the basis of the information then available to him . . . ." *People* v. *Spencer, supra,* 66 Cal. 2d, at 165, 424 P. 2d, at 720.

spread the petitioner's confessions before the jury.[14] That is an inference the Government has not dispelled.

It has not been demonstrated, therefore, that the petitioner's testimony was obtained "by means sufficiently distinguishable" from the underlying illegality "to be purged of the primary taint." *Wong Sun* v. *United States,* 371 U. S. 471, 488. Accordingly, the judgment must be

*Reversed.*

MR. JUSTICE BLACK, dissenting.

It seems to me that the Court in this case carries the Court-made doctrine of excluding evidence that is "fruit of the poisonous tree" to a wholly illogical and completely unreasonable extent. For this and many of the reasons suggested by my Brother WHITE's dissent, I agree that holdings like this make it far more difficult to protect society "against those who have made it impossible to live today in safety." I would *affirm* this conviction.

MR. JUSTICE HARLAN, dissenting.

Like my Brother BLACK and my Brother WHITE, I am unable to understand why the Court reverses this petitioner's conviction. There is no suggestion that the testimony in question, given on the stand with the

---

[14] Compare *United States* v. *Bayer,* 331 U. S. 532: "Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first." *Id.,* at 540 (dictum). Compare also *Darwin* v. *Connecticut,* 'supra, 391 U. S. 346, 349; *id.,* at 350–351 (separate opinion of MR. JUSTICE HARLAN); *Beecher* v. *Alabama,* 389 U. S. 35, 36, n. 2; *Clewis* v. *Texas,* 386 U. S. 707, 710.

advice of counsel, was somehow unreliable. Nor, as the opinion of Mr. Justice White amply demonstrates, is there any plausible argument that a rule excluding such evidence from use at a later trial adds an ounce of deterrence against police violation of the *Mallory* rule.

I do not doubt that "voluntariness" is not always a purely subjective question as to the defendant's state of mind; it may involve an objective analysis of the fairness of the situation in which government agents placed him. Nor would I rule out the possibility that a direct product of unlawful official activity might properly be excludable as a fruit of that activity—even where the product is so unforeseeable that a deterrent rationale for exclusion will not suffice—on the ground that the Government should not play an ignoble part.

But these concepts do not reach this case. Here, apparently in all good faith, the Government offered at one trial an out-of-court confession by petitioner. It was objected to on the ground that it had been obtained in violation of the *Mallory* rule. That objection was overruled, and the defense had to decide how to proceed. While defense counsel may have believed he had good grounds for reversal on appeal (as the Court of Appeals later held he did) he also had to present a defense in an effort to persuade the jury to acquit. That defense had of course to be structured to meet the Government's case as it stood—including but not limited to the admitted confession—and counsel decided to put his client on the stand.*

---

*This case is altogether different from *Darwin* v. *Connecticut*, 391 U. S. 346, 350, in which I took the position that when a first confession is involuntary a later confession produced by the erroneous impression that the cat was already out of the bag should also be considered involuntary. Here (1) petitioner's out-of-court confes-

The situation was one that criminal and civil defendants face all the time: believing that error has been committed that will result in reversal on appeal, they must nevertheless present a defense, and in doing so may help the other side on retrial. The situation here is no different in principle from the sacrifice of surprise, or the conveyance of important leads to the other side, that may occur because a trial continues even after error has been committed. It is a price that is paid for having a system of justice that insists, generally, upon full trials before appellate review of points of law. It is a problem that can be avoided, within our system, only by doing what is done here, namely, reaching the wrong result as between the litigants. For me this is not acceptable doctrine.

MR. JUSTICE WHITE, dissenting.

This case and others like it would be more comprehensible if they purported to make procedures for trying criminals more reliable for finding facts and minimizing mistakes. Cases like *United States* v. *Wade,* 388 U. S. 218 (1967); *Gilbert* v. *California,* 388 U. S. 263 (1967); and *Bruton* v. *United States,* 391 U. S. 123 (1968), for example, at least could claim this redeeming virtue. But here, as in *Miranda* v. *Arizona,* 384 U. S. 436 (1966), decision has emanated from the Court's fuzzy ideology about confessions, an ideology which is difficult to relate to any provision of the Constitution and which excludes from the trial evidence of the highest relevance and probity.

sion was not involuntary; (2) petitioner's in-court statements were given upon the advice of counsel, and there is no indication whatever that petitioner misunderstood the position he was in; (3) the in-court testimony could not possibly have been thought merely cumulative of the confession, for it (a) was given in order to rebut the confession and (b) damaged petitioner's position in a manner quite independent of the use of the confession.

Three times petitioner has been convicted of murdering his robbery victim with a shotgun. The first trial was in 1960. At the second trial, in 1963, written and oral statements by petitioner and his codefendants were introduced. Petitioner then took the stand and gave his version of the events leading to the killing. He admitted being at the scene of the crime. Conviction followed. The Court of Appeals again reversed, this time on the ground that petitioner's statements were wrongfully admitted, not because they were involuntary or in any way coerced, but because they violated *Mallory* v. *United States,* 354 U. S. 449 (1957), and recent decisions of the Court of Appeals in *Killough* v. *United States,* 119 U. S. App. D. C. 10, 336 F. 2d 929 (1964), and *Harling* v. *United States,* 111 U. S. App. D. C. 174, 295 F. 2d 161 (1961). By the time of the third trial, in 1966, prosecution witnesses were dead or unavailable. Considerable reliance was placed on the testimony which had been given at the second trial, including petitioner's admissions when he took the stand in his own defense. Harrison was convicted for a third time. It is this conviction which the Court now reverses, contrary to the judgment of the Court of Appeals. That court found no reason to exclude petitioner's voluntary statements, made under oath in open court and with the advice of counsel.

There is no suggestion that petitioner's testimony at his second trial was untruthful or unreliable. Nor does the Court hold that Harrison was compelled to take the stand and incriminate himself contrary to his privilege under the Fifth Amendment. The reason is obvious. If a defendant were held to be illegally "compelled" when he takes the stand to counter strong evidence offered by the prosecution and admitted into evidence, he would be as much "compelled" whether it was error to admit the evidence or not. To avoid this absurd construction of the Self-Incrimination Clause, the Court casts about for

a different label. Harrison's testimony at the second trial, the Court now says, was not "compelled" but only "impelled" by the confessions. Alternatively it suggests that except for the confessions Harrison would not have taken the stand and admitted being at the scene of the crime. On either basis, his testimony at the second trial is deemed a fruit of illegally obtained confessions from which the Government should be permitted no benefit whatever. I disagree.

The doctrine that the "fruits" of illegally obtained evidence cannot be used to convict the defendant is complex and elusive. There are many unsettled questions under it. The Court, however, seems to overlook all of these problems in adopting an overly simple and mechanical notion of "fruits" to which I cannot subscribe. In the view of the Court, if some evidentiary matter is causally linked to some illegal activity of the Government—linked in that broad "but for" sense of causality which rarely excludes relevant matters which come later in time—it is a "fruit" and excludable as such. This strictly causal notion of fruits is, of course, consistent with the dictum in *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392 (1920), that "[i]f knowledge of [the facts] is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it . . . ." In *Silverthorne,* however, the "fruits" were copies and photographs of original documents illegally seized; it would be difficult to imagine a case where the fruits hung closer to the trunk of the poison tree. The Court seems to overlook the critical limitation placed upon the fruits doctrine in *Nardone* v. *United States,* 308 U. S. 338, 341 (1939), where Mr. Justice Frankfurter stated that:

> "Sophisticated argument may prove a causal connection between information obtained through illicit

wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint."

Cf. *Wong Sun* v. *United States,* 371 U. S. 471, 487–488 (1963); *United States* v. *Wade,* 388 U. S. 218, 239–242 (1967). The concept implicit in the quoted statement, as I understand it, is that mere causal connection is insufficient to make something an inadmissible fruit. Rather it must be shown that suppression of the fruit would serve the same purpose as suppression of the illegal evidence itself. When one deals with the fruits of an illegal search or seizure, as in *Silverthorne,* or with the fruits of an illegal confession, as the Court decides that we do in this case,[1] the reason for suppression of the original illegal evidence itself is prophylactic—to deter the police from engaging in such conduct in the future by denying them its past benefits. See *Linkletter* v. *Walker,* 381 U. S. 618, 634–639 (1965). Since deterrence is the only justification for excluding the original evidence, there is no justification for excluding the fruits of such evidence unless suppression of them will also serve the prophylactic end. I deem this the crucial issue, and proper resolution of it requires a different result from that to which the Court has bulled its way.

As the Court makes plain, it is "difficult to unravel the many considerations that might have led the petitioner to take the witness stand . . . ." *Ante,* at 224. Given the difficulty of determining after the fact why the petitioner took the stand, it would seem patent that

---

[1] The essential predicate for excluding petitioner's testimony is the illegality of his confessions. That issue, seemingly a condition precedent to reversal, the Court avoids. It simply assumes, without deciding, both that the confessions were properly rejected by the Court of Appeals and that the prior decisions of the Court of Appeals in *Killough* and *Harling* were correctly decided. I would not reverse without reaching those questions.

at the confession stage the police would be wholly without a basis for predicting whether the defendant would be more likely to waive his privilege against self-incrimination and take the stand if they were to obtain a confession than if they were not. Accordingly, it cannot realistically be supposed that the police are spurred on to greater illegality by any rational supposition that success in that illicit endeavor will make it more likely that the defendant will make incriminatory admissions on the witness stand. If this is the case, and I see no grounds for doubting that it is, then suppression of the petitioner's testimony, even if it was in fact induced by the wrongful admission into evidence of an illegal confession, does not remove a source of further temptation to the police to violate the Constitution.[2]

Even if it were true that the rule adopted by the Court served some minimal deterrent function, I would not be

---

[2] "The purpose of depriving the government of any gain is to remove any incentive which exists toward the unlawful practice. The focus is forward—to prevent future violations, not punish for past ones. Consequently, where the chain between the challenged evidence and the primary illegality is long or the linkage can be shown only by 'sophisticated argument,' exclusion would seem inappropriate. In such a case it is highly unlikely that the police officers foresaw the challenged evidence as a probable product of their illegality; thus it could not have been a motivating force behind it. It follows that the threat of exclusion could not possibly operate as a deterrent in that situation. Absent this, exclusion carries with it no benefit to society and should not prejudice society's case against a criminal." Comment, Fruit of the Poisonous Tree—A Plea for Relevant Criteria, 115 U. Pa. L. Rev. 1136, 1148–1149 (1967). In the past the Court has shown greater appreciation of the significance of the deterrence element as well as of the causal element, for both must be present to present a substantial question for this Court. See *Smith* v. *United States*, 117 U. S. App. D. C. 1, 324 F. 2d 879 (1963), cert. denied, 377 U. S. 954 (1964); *Harlow* v. *United States*, 301 F. 2d 361 (C. A. 5th Cir.), cert. denied, 371 U. S. 814 (1962).

able to join the Court. Marginal considerations such as these, especially when one is dealing with confessions excludable because of violation of the technical requirements of cases like *Mallory* v. *United States,* 354 U. S. 449 (1957); *Massiah* v. *United States,* 377 U. S. 201 (1964); *Escobedo* v. *Illinois,* 378 U. S. 478 (1964); and *Miranda* v. *Arizona,* 384 U. S. 436 (1966), are insufficient to override the interest in presenting all evidence which is relevant and probative. When one adds the fact that in this case, as in most others where the issue will now arise, the defendant took the stand only upon advice of counsel, the argument for deterrence seems virtually to vanish altogether. Police now know that interrogation without warnings will void a confession, and the Federal Government at least is apprised that unduly long detention prior to arraignment will invalidate a confession obtained during the detention period. When this knowledge is coupled with their realization that a defendant's subsequent act of taking the stand to diminish the impact of an improperly admitted confession is guided by the advice of counsel, we have a situation in which the inducements to the police to refrain from illegality are already so clear and so strong that excluding testimony as the Court does in this case cannot conceivably be thought to decrease illegal conduct by the police. The police will know that if they fail to give warnings or if they detain the prisoner too long, any confession thus obtained will be unusable and that timely and effective objection to it will be taken as soon as the defendant acquires a lawyer. In such circumstances they could not reasonably believe that the confession will ever actually induce the defendant to take the witness stand. In short, the fact that the defendant has counsel who gives him specific advice deprives the Court's "fruits" argument of the last vestige of deterrence. Of course, in a situation where the illegality of the methods used to obtain the initial

evidence is open to doubt, as was true in this case, the fact that the defendant has counsel has little if any effect on the deterrence value of excluding the fruits. Even in such a case, however, I find the deterrence value of such exclusion too minimal. In any event it is clear that the deterrence value in such cases provides insufficient justification for the general rule which the Court adopts today.

I am deeply concerned about the implications of the Court's unexplained and unfounded decision. If Harrison's trial testimony was tainted evidence because induced by an illegal confession, then it follows, as the Court indicates by quoting from *People* v. *Spencer,* 66 Cal. 2d 158, 164, 424 P. 2d 715, 719 (1967), that Harrison's testimony would be automatically excluded even if the confessions had not been admitted. Similarly, an inadmissible confession preceding a plea of guilty would taint the plea. And, as a final consequence, today's decision would seem to bar the use of confessions defective under *Miranda* or *Mallory* from being used for impeachment when a defendant takes the stand and deliberately lies. All these results would seem to flow necessarily from the Court's adoption of a test for inadmissible fruits which relies only upon the existence of a causal link between the original evidence seized illegally and any subsequent product of it. Since precluding the prosecution from any of these uses will not serve the prophylactic end which alone justifies the exclusion of the original illegal evidence, and because all of these uses of evidence admittedly of relevance and high probative value are important to the overriding goal of criminal law—the just conviction of the guilty—I must dissent.

The Court compounds its substantive error today by the procedural ploy of switching the burden of proof to the prosecution. It rules that once it is shown that the defendant testified after inadmissible confessions were

used, "the Government must show that its illegal action did not induce his testimony." This despite the fact that the only person with actual knowledge of the subtle and varied "springs of conduct" which caused the defendant to take the stand is the defendant himself. This despite the fact that only five years ago this Court clearly affirmed the traditional rule that the defendant bears the burden of showing that the evidence complained of was an inadmissible fruit of illegality. *Fahy* v. *Connecticut*, 375 U. S. 85, 91 (1963). See *Nardone* v. *United States*, 308 U. S. 338, 341 (1939). This switch in the burden can be justified only by the Court's misguided desire to exclude important evidence for which it has somehow acquired a constitutional distaste. Because I reject the end which the Court seeks to serve, I cannot endorse this naked manipulation of means to achieve that end.

Given the Court's current ideology about confessions, there is perhaps some logic on the side of the Court. But common sense and policy are squarely opposed. The important human values will not be served by the obstacles which the Court now places in the path of policeman, prosecutor, and trial judge alike. Criminal trials will simply become less effective in protecting society against those who have made it impossible to live today in safety.