# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3204

_____

Patricia Hendrickson,                          *
                                               *
    Petitioner - Appellant,                    *
                                               *    Appeal from the United States
v.                                             *    District Court for the
                                               *    Eastern District of Arkansas.
Larry Norris, Director, Arkansas               *
Department of Correction,                      *
                                               *
    Respondent - Appellee.                     *

_____

Submitted:  May 11, 2000

Filed:  September 7, 2000

_____

Before BOWMAN, FLOYD R. GIBSON,[1] and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 1984, Patricia Hendrickson was found guilty of capital murder and sentenced to death for conspiring with Norma Foster and Mark Yarbrough to hire Howard Vagi to kill her husband.  The Supreme Court of Arkansas reversed the conviction, concluding that an inculpatory post-arrest statement was improperly admitted because

_____

[1]Complications from an automobile accident have prevented Judge Gibson from reviewing this opinion prior to its being filed.  The opinion is consistent with Judge Gibson's vote at conference.

the police had continued to question Hendrickson after she asked to talk to her attorney.  See Hendrickson v. State, 688 S.W.2d 295, 297 (Ark. 1985).  Hendrickson was retried, again convicted, and sentenced to life in prison without possibility of parole.  The Supreme Court of Arkansas affirmed.  See Hendrickson v. State, 719 S.W.2d 420, 422-24 (Ark. 1986).  After Hendrickson was denied state post-conviction relief, she filed this petition for federal habeas relief under 28 U.S.C. § 2254.  The district court[2] denied her petition, and Hendrickson appeals.  The issue on appeal is whether Hendrickson's constitutional rights were violated when the trial judge ruled that the State could impeach a psychologist's testimony at the second trial using Hendrickson's illegally obtained statement and her testimony at the first trial.  Agreeing with the district court that any such error was harmless, we affirm.[3]

At the second trial, the State's main witness was Mark Yarbrough, who testified in detail about the arrangements for carrying out the murder.  Much of the planning was done outside the presence of Hendrickson, with Norma Foster explaining the scheme to Yarbrough, who then dealt with the killer, his school friend Vagi.  But after Foster had identified the victim as Orin Hendrickson, and given Yarbrough a map and key to the Hendrickson home, Hendrickson met with Yarbrough at Foster's home and gave

---

[2]The HONORABLE HENRY L. JONES, JR., United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred with the consent of the parties.  See 28 U.S.C. § 636(c).

[3]In affirming Hendrickson's second conviction, the Supreme Court of Arkansas construed Harris v. New York, 401 U.S. 222, 226 (1971), and Oregon v. Hass, 420 U.S. 714, 723 (1975), as permitting this cross-examination of a defense witness with the defendant's otherwise inadmissible statement.  Four years later, the United States Supreme Court refused to extend Harris and Hass to the cross-examination of defense witnesses other than the defendant.  See James v. Illinois, 493 U.S. 307, 320 (1990).  The district court granted a certificate of appealability only on its harmless error determination, and the parties have not briefed the merits of this constitutional issue.  Because we affirm the harmless error ruling, we need not address it.

him a picture of her husband, commenting she had too much to lose in a divorce and "it would be better if he died." Hendrickson later gave Yarbrough $120 for Vagi's expenses. As planned, the murder occurred on a Thursday, when Foster and Hendrickson were out of town. After the murder, Yarbrough returned the key to Hendrickson, and she gave Yarbrough payments totaling over $5,000.

Howard Vagi testified that he had no contact with Hendrickson. He received the map, the key, and the victim's name and picture from Yarbrough and committed the murder according to the plan, shooting Orin Hendrickson on Thursday and ransacking the home to look like a robbery had occurred. The State presented corroborating evidence through John Clark, who testified that Hendrickson asked him a few months prior to the murder if he knew someone who could have someone killed. In addition, Paul Roberson, a business partner of the Hendricksons, testified that, while in jail, Hendrickson explained how she had paid for the murder and said, "I'm sorry. I didn't mean for it to happen. I do not feel guilty."

Hendrickson's defense was that she was intellectually and emotionally incapable of contriving the murder, she did not want the murder to be committed, and her low I.Q. and personality traits made her highly susceptible to the influence or control of others. To support this theory, the defense called psychologist Douglas Stevens, who interviewed Hendrickson four times while she was incarcerated after the first trial and administered various psychological tests. Dr. Stevens testified that Hendrickson's I.Q. is well below average, and that she is "a very feminine, mousey, passive, dependent kind of person who would be expected to be easily led." Dr. Stevens further testified that Hendrickson's memory was sketchy for several months following the murder. His direct testimony ended with the following:

Q. Doctor, did you make a determination as to whether she had any guilty knowledge in connection with the death of Orin Hendrickson?

A. I did. It was my determination that she does not have.

Prior to commencing cross-examination, the prosecutor asked the court to order Hendrickson to make herself available for cross-examination on the question whether she had any guilty knowledge or memory of her husband's death. The court refused to order Hendrickson to testify, but ruled that the State could cross examine Dr. Stevens using Hendrickson's inadmissible inculpatory statement and her testimony from the first trial. The defense then withdrew Dr. Stevens as a witness, and the court instructed the jury to disregard his direct testimony.

Hendrickson argues that the trial court violated her Sixth Amendment right by permitting the prosecution to cross examine Dr. Stevens with her illegally obtained incriminating statement, a ruling that forced the defense to withdraw Dr. Stevens's direct testimony. This contention is subject to harmless error analysis. See Arizona v. Fulminante, 499 U.S. 279, 306-12 (1991) (opinion of Rehnquist, C.J.). When the state courts have not conducted a harmless error analysis, as in this case, we apply the harmless error standard set out in Chapman v. California, 386 U.S. 18, 24 (1967), requiring the State to show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." See Orndorff v. Lockhart, 998 F.2d 1426, 1430 (8th Cir. 1993), cert. denied, 511 U.S. 1060 (1994). Applying that standard, the district court concluded that the ruling eliminating Dr. Stevens's testimony was harmless error because "its slight weight simply could not have overcome the State's case." We review this harmless error determination *de novo*, as a mixed question of law and fact. See Orndorff, 998 F.2d at 1432.

On appeal, Hendrickson argues the trial court's ruling was "devastating to the defense" because Dr. Stevens's testimony supported her theory that she did not want the murder to be committed and her low I.Q. and personality traits made her susceptible of being led by Foster and Yarbrough. After careful review of the trial record, we agree with the district court's harmless error analysis. In particular, we note that,

immediately after Dr. Stevens's testimony was withdrawn, Dr. Donald Chambers, a psychiatrist, testified for the defense that Hendrickson has a very low I.Q. and is "very unaggressive and very unassuming and undemanding." Thus, Dr. Stevens's withdrawn testimony was essentially cumulative, convincing us beyond a reasonable doubt that its absence did not contribute to the verdict.

Hendrickson further argues that the trial court's ruling permitting the prosecution to cross examine Dr. Stevens with her prior trial testimony "den[ied] Hendrickson her Fifth and Fourteenth Amendment right to make a voluntary decision whether to testify" at the second trial. This contention is without merit. "A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives." Harrison v. United States, 392 U.S. 219, 222 (1968); see United States v. Azure, 845 F.2d 1503, 1508 (8th Cir. 1988). In Harrison, prior trial testimony was excluded as the fruit of unconstitutionally obtained pretrial confessions. Hendrickson does not contend that her testimony from the first trial could not be used to cross examine Dr. Stevens because it was the fruit of her illegally obtained pretrial statement. Such a contention clearly could not withstand our harmless error analysis of the impact of omitting Dr. Stevens's testimony altogether.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-