996 F.2d 1219
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Douglas A. MIDDLETON, Petitioner-Appellant,
v.
James P. MURPHY, Respondent-Appellee.
 No. 92-1498.
 United States Court of Appeals, Seventh Circuit.
 Argued June 15, 1993.
Decided June 21, 1993.
 
 Before BAUER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Douglas A. Middleton, a Wisconsin inmate, brought this petition under 28 U.S.C. § 2254 to challenge his 1984 convictions for first degree murder, armed robbery and arson. In the petition, Middleton alleged that his pretrial confessions were obtained in violation of his Fifth and Fourteenth Amendment rights and should not have been admitted in evidence at his trial. The district judge denied the petition, and this appeal followed.
 
 
 2
 We agree with the district judge's legal ruling that under Moran v. Burbine, 475 U.S. 412 (1986), Middleton's confessions were voluntary notwithstanding the failure of the police to inform him of his lawyer's presence at the police station. As the district judge stated:
 
 
 3
 Because [Middleton] did not invoke his right to counsel when he called his wife, and then waived the right when he was given his Miranda warnings, the interrogating officers were not required to inform him when the lawyer arrived at the station. [Middleton] did not ask for a lawyer; therefore the lawyer's attempt to see him was unilateral. Moran v. Burbine, 475 U.S. at 420, makes clear that a suspect's right to a lawyer belongs to the suspect, and cannot be invoked by a lawyer. Id. at 424-25. [Middleton] validly waived his right to the presence of counsel. There is no allegation that the waiver was coerced by physical or psychological pressure. Although knowledge that a lawyer was willing to see him "might have affected his decision to confess, ... [the Supreme Court has] never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Id. at 422. [Middleton] offered his confessions after a valid waiver of his right to counsel, and those confessions were admissible at his trial.
 
 
 4
 Middleton v. Murphy, No. 91-C-0751-C, slip op. at 16-17 (W.D.Wis.1992). See also Holland v. McGinnis, 963 F.2d 1044, 1051 n. 3 (7th Cir.1992), cert. denied, 113 S.Ct. 1053 (1993); Matney v. Armontrout, 956 F.2d 824, 825-26 (8th Cir.1992). Accordingly, we AFFIRM the decision of the district judge for the reasons stated in the attached Opinion and Order.
 
 ATTACHMENT
 
 5
 IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT
 
 OF WISCONSIN
 
 6
 DOUGLAS ARTHUR MIDDLETON, Petitioner,
 
 
 7
 v.
 
 
 8
 JAMES P. MURPHY, Warden, Columbia Correctional Institution,
 
 
 9
 Portage, Wisconsin, Respondent.
 
 91-C-0751-C
 OPINION AND ORDER
 
 10
 BARBARA B. CRABB, District Judge.
 
 
 11
 This is a petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate at the Columbia Correctional Institution in Portage, Wisconsin, contends that he is in custody in violation of the Constitution of the United States. Petitioner seeks relief on the grounds that his pre-trial confessions were obtained improperly and used against him improperly at trial; that because the confessions were used at trial he was forced to take the stand against his will; and that without the confessions and testimony, the evidence at trial would have been insufficient to convict him. Respondent asserts that petitioner's oral and written confessions were obtained legally and were not admitted erroneously at trial; that even if the confessions were obtained illegally and so admitted erroneously, petitioner waived his objection to their admission by testifying at trial; and that because the question whether testimony at trial is impelled is a question of fact, the Wisconsin Court of Appeals was correct when it applied the clearly erroneous standard to the trial court's finding that petitioner's testimony was not impelled.[1] Petitioner has exhausted his state remedies as required under 28 U.S.C. § 2254.[2]
 
 
 12
 After reviewing the entire record, I conclude that the state trial court was correct in concluding that petitioner did not invoke his right to counsel before confessing, and I conclude that, as a matter of law, the arrival of petitioner's attorney at the police station was not a fact of which the police were required to advise petitioner, so that the trial court did not err in admitting the confessions into evidence. Because his oral and written confessions were constitutionally admissible, petitioner's testimonial confession was not impelled. The petition for writ of habeas corpus will be denied.
 
 
 13
 In considering habeas corpus petitions, the district court presumes state court findings of fact to be correct unless, upon consideration of the record as a whole, it concludes that the factual determinations are not "fairly supported" by the record. 28 U.S.C. § 2254(d)(8); United States ex rel. Savory v. Lane, 832 F.2d 1011, 1019 (7th Cir.1987). Petitioner does not object to the accuracy or completeness of the state court findings of fact, except for the trial court finding that his testimony at trial was not impelled. I adopt the following facts, based on the Wisconsin Court of Appeals' decisions in State v. Middleton, 135 W.2d 297, 399 N.W.2d 917 (Ct.App.1986) and State v. Middleton, 1988 WL 126443, 1988 Wisc.App. LEXIS 796 (Ct.App.1988), supplemented by pertinent facts from the record.
 
 FACT FOUND BY STATE COURTS
 
 14
 Petitioner murdered Hilda Miller, age 72, late on June 4 or early on June 5, 1984, in Edgerton, Wisconsin. He bludgeoned her with a hammer and then robbed her and set her apartment on fire. Between 10:00 and 10:30 a.m. on June 5, Lt. Toler of the Rock County, Wisconsin, Sheriff's Department arrested petitioner, advised him of his Miranda rights including his right to consult with a lawyer before and during questioning, and took him to the sheriff's department.
 
 
 15
 At about 1:16 p.m., petitioner requested that a deputy sheriff place a call to petitioner's home. The deputy heard petitioner tell his wife that he was in the Rock County Jail and ask her to contact Gregory Hunsader. The deputy knew that Hunsader was a local lawyer, but petitioner did not refer to Hunsader as a lawyer during the conversation.
 
 
 16
 After the telephone call, the deputy turned petitioner over to the detective bureau for questioning. The deputy did not inform the detectives that petitioner had asked his wife to call Hunsader.
 
 
 17
 Three detectives began questioning petitioner at about 1:30 p.m. Lt. Toler initiated the session by asking petitioner whether he understood his Miranda rights; petitioner said that he did. At no time did petitioner ask to see Hunsader or any other lawyer.[3] Sometime between 1:20 and 2:30 p.m. on June 5, petitioner confessed orally that he had murdered Hilda Miller.
 
 
 18
 At about 1:20 p.m., petitioner's wife called Hunsader and left a message that he should meet petitioner at the jail. Hunsader received the message at about 2:10. When he arrived at the jail at about 2:20, he asked to see petitioner. A deputy told Hunsader to wait because no interview room was available; at about 2:30 p.m. one of the interrogating detectives was told that Hunsader wanted to see petitioner. The detective informed Lt. Toler, who replied that petitioner had not requested a lawyer. The detective told Hunsader that petitioner had not asked for a lawyer, and refused to tell petitioner that his wife had arranged for Hunsader to meet him. The detective told Hunsader he could meet with Middleton if the district attorney agreed; at about 2:50 p.m. the detective told Hunsader that a lawyer in the district attorney's office had refused Hunsader permission to interview petitioner.
 
 
 19
 Between 2:44 and 3:56 p.m., after again receiving Miranda warnings, petitioner waived his rights in writing and gave a written statement to the detectives. Later in the afternoon, he gave two more written statements; before each, the detectives advised him of his rights and he waived them in writing.
 
 
 20
 Petitioner was alert and responsive during the questioning. He was not threatened and was not promised leniency.[4]
 
 
 21
 Before trial, petitioner offered a motion in limine, asking that his confessions be excluded from evidence. The state court judge denied petitioner's motion, finding that the deputy who had overheard petitioner tell his wife to call Hunsader had no duty to tell the interrogating detectives, and that because petitioner had been advised of his Miranda rights, and understood them, before he was questioned and before he gave his statements, his oral and written confessions were voluntary, were not coerced or the product of improper police pressure, and therefore were admissible.
 
 
 22
 At trial, the state introduced the confessions into evidence. Petitioner took the stand, testifying in his own defense that he had indeed killed Hilda Miller, but adding that he had been so intoxicated that he could not have formed the requisite intent for a conviction of first degree murder.
 
 
 23
 On September 1, 1984, the jury returned guilty verdicts against petitioner on the charges of first degree murder, armed robbery, and arson. The court entered judgment and sentenced petitioner to life for the murder conviction, ten years for the armed robbery conviction, and five years for the arson conviction.
 
 
 24
 Petitioner appealed his convictions on the grounds that he invoked his right to counsel when the deputy overheard him ask his wife to contact Hunsader, that his interrogation should have ceased at that point, that his confessions should have been suppressed because the interrogation did not cease, that his trial testimony was impelled by the admission of the illegal confessions, and that the admission of the confessions was reversible error because the state did not have enough evidence to convict him without the confessions. The court of appeals ruled that petitioner had not invoked his right to counsel when the deputy overheard him ask his wife to call Hunsader, but that any confession obtained after Hunsader arrived at the sheriff's department was obtained in violation of petitioner's due process rights under the Fifth and Fourteenth Amendments because petitioner's confessions were not given after a knowing and voluntary waiver of his Miranda rights if he did not know his attorney had arrived at the station. The court of appeals found it undisputed that the three written confessions were given after Hunsader's arrival, and therefore should have been suppressed. On the record before it, however, the court of appeals could not determine whether petitioner's oral confession had been obtained before or after Hunsader arrived. The court of appeals remanded the case to the trial court for determination of two issues: 1) whether the oral confession had been obtained before or after 2:20 p.m., when Hunsader arrived at the department, and 2) if the confession was obtained after 2:20 p.m., and therefore was inadmissible, whether petitioner's testimony at the trial was freely given or impelled by the admission of the inadmissible confessions. At an evidentiary hearing on remand, the trial court determined that petitioner had given his oral confession after Hunsader arrived at the sheriff's department, and that the confession had been admitted erroneously into evidence. The court concluded also that the state's use of the confessions did not impel petitioner to testify, but that petitioner testified in order to make second-degree murder a jury issue, thereby waiving his objection to the admission of the inadmissible confessions and rendering the court's error harmless. To reach its decision that petitioner's testimony was not impelled, the trial court, at the direction of the court of appeals, reviewed the state's case independently of the tainted evidence, and the impact of the tainted evidence on the jurors in light of the other evidence. The court based its finding that petitioner's testimony was not impelled on petitioner's sister's testimony, the state's evidence other than the confessions, and the trial court's conclusion that petitioner would be entitled to a second-degree murder instruction only if he testified.
 
 
 25
 Petitioner appealed the trial court's decision a second time. In State v. Middleton, 1988 WL 126443, 1988 Wis.App. LEXIS 796, the court of appeals, deeming the question whether petitioner's testimony at trial was impelled to be a question of fact, applied a clearly erroneous standard of review to the trial court's finding that petitioner's testimony at trial was not impelled. The court of appeals found sufficient evidence in the record to support the trial court's finding, and so upheld its decision and petitioner's conviction. The Supreme Court of Wisconsin denied review when petitioner appealed.
 
 OPINION
 
 26
 Petitioner raises several challenges to the findings and procedures of the Wisconsin courts that convicted him of murder, robbery and arson. The basis of the challenges is that the state courts committed federal constitutional error by ruling that petitioner's trial testimony was not impelled after finding that his pre-trial confessions were obtained illegally. The federal habeas court "can grant habeas relief only when there is a violation of federal statutory or constitutional law," and reviews de novo such questions. Brewer v. Aiken, 935 F.2d 850, 854-55 (7th Cir.1990) (quoting United States ex rel. Lee v. Flannigan, 884 F.2d 945, 952 (7th Cir.1989). Because it is dispositive of all of petitioner's challenges, I will begin with the challenge to the state court holdings that respondent raises in its response to this petition for habeas corpus.
 
 
 27
 Respondent asserts that the trial court was correct in the first instance when it allowed into evidence the confessions of petitioner. The court of appeals determined in petitioner's first appeal that any confession secured after Hunsader's arrival at the sheriff's department was obtained illegally and was inadmissible. Middleton, 135 Wis.2d at 313-14. The court held that petitioner had "shown no reasonable basis ... to believe that the police would understand that he wanted an attorney, [and that therefore he] did not invoke his right to counsel," id. at 310, but then went on to hold that any confession obtained after the lawyer arrived at the station was inadmissible because "the knowing quality of Middleton's waiver [of his Miranda rights] disappeared when the facts of his interrogation were changed without his knowledge." Id. at 313.
 
 
 28
 The foundation of the right to counsel at issue is the Fifth Amendment privilege against self-incrimination and the requirement that suspects be warned prior to custodial interrogation that they have the right to remain silent and the right to have a lawyer present during questioning. Miranda v. Arizona, 384 U.S. 436, 469 (1966). Statements made by a suspect during interrogation are not admissible to establish guilt unless the suspect is informed of and waives his Miranda rights prior to making the statements. If a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." Id. at 444-45. Once a suspect invokes his right to counsel, before or during questioning, "the interrogation must cease until an attorney is present." Id. at 474.
 
 
 29
 However, if a suspect does not invoke his right to counsel, but rather waives the right, then the interrogation may proceed. This is true even if a lawyer, either on her own or at the behest of a third party but without the knowledge of the suspect, arrives at the interrogation site and asks to consult with the suspect. Moran v. Burbine, 475 U.S. 412, 422-23 (1986). The reasoning is that the right to counsel belongs to the suspect rather than the lawyer, that it is the suspect who must make the knowing waiver, and that "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." Id. at 422.
 
 
 30
 After being informed of his Miranda right to counsel, petitioner could choose one of two routes: he could choose not to invoke his right to counsel, in which case his interrogation could continue even after a lawyer appeared and wanted to see him, or he could invoke his right to counsel, in which case his interrogation had to stop immediately and could not continue until his counsel was in the interrogation room with him. Miranda, 384 U.S. at 474; Minnick v. Mississippi, --- U.S. ----, 111 S.Ct. 486 (1990). Whether the interrogating officers were required to inform petitioner that the lawyer had asked to see him depended on whether petitioner had invoked his right to counsel.
 
 
 31
 Petitioner asserts that he did so when, after his arrest and after he was advised of his Miranda rights, he asked a deputy to place a call to his home and the deputy overheard petitioner tell his wife that he was in jail and she should contact Gregory Hunsader. Petitioner did not refer to Hunsader as a lawyer, and in the five times was given his Miranda warnings or the three times he signed a written waiver of his right to counsel, he did not ask to see Hunsader or any other lawyer.[5] The court of appeals found the comment from petitioner to his wife to be insufficient to invoke his right to counsel because petitioner failed to communicate to the police his desire to have a lawyer present. Middleton, 135 Wis.2d at 309-10. The court observed that "we see no reason why indirect communication should be ineffective [to invoke the right to counsel] so long as the suspect has reason to believe the communication is effective," but found that the record failed to show that petitioner had a reason to believe he had made such a communication to the police. Id.
 
 
 32
 The court of appeals' holding that petitioner did not invoke his right to counsel is supported by the decisions of the Court of Appeals for the Seventh Circuit and the United States Supreme Court. Most recently, the Supreme Court has specified that the test for whether a suspect has invoked his right to counsel is not "the likelihood that a suspect would wish counsel to be present," but rather that he "ha[s] expressed his wish for the particular sort of lawyerly assistance that is the subject of Miranda." McNeil v. Wisconsin, 111 S.Ct. 2204, 2209 (1991) (emphasis in original). Expression "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." Id. (emphasis in original). In McNeil, a suspect was represented by a public defender at an initial appearance, as was his right under the Sixth Amendment. Later in the day, he was taken to an interrogation room to be questioned about several different offenses, and given his Miranda warnings. After signing a waiver form, he confessed to the crimes. He sought then to suppress his confession on the ground that he had invoked his right to counsel at the initial appearance, and so could not be interrogated thereafter without his lawyer present.
 
 
 33
 The Supreme Court differentiated between the Fifth Amendment prophylactic right to counsel designed to counteract the pressures of custodial interrogation and the Sixth Amendment right to counsel for accused criminal defendants. Id. at 2208. The Sixth Amendment right to counsel attaches when a prosecution is commenced and is "offense-specific," so that invocation of it pertains to the particular offense with which a suspect is charged. Id. at 2207-08. It cannot be invoked once for all future prosecutions. Id. at 2207. On the other hand, the Fifth Amendment right to counsel is non-offense-specific, so that when it is invoked no interrogation for any offense can occur until a lawyer is present. Id. at 2208. In order to invoke it, a suspect must express "a desire for the assistance of an attorney in dealing with custodial interrogation by the police." Id. at 2209. In the McNeil context, this means that a Sixth Amendment invocation of right to counsel at an initial appearance does not translate into a Fifth Amendment invocation of right to counsel at a later interrogation for a different offense because the suspect did not express his desire to have a lawyer assist him in the interrogation.
 
 
 34
 In Quadrini v. Clusen, 864 F.2d 577 (7th Cir.1989), the Court of Appeals for the Seventh Circuit considered the question of what constitutes invocation of the right to counsel. In Quadrini, a suspect who was being interrogated stated that he did not want a lawyer and signed a Miranda waiver, but then showed the officers the business card of a public defender and told the officers that he had been told by the public defender not to make a statement. Quadrini, 864 F.2d at 582. The court found that the suspect had waived his right to counsel unequivocally, even though he had produced the business card of a lawyer and told the officers of the lawyer's advice. Id. at 582-83. The officers knew that the suspect had met already with a lawyer about the charges he faced, but that alone was not enough to invoke his right to counsel; the suspect had to ask for the lawyer to be present at the interrogation.
 
 
 35
 In this case, petitioner failed to invoke his Fifth Amendment right to counsel. He never asked to see a lawyer and he signed a waiver of his right to counsel three times. It was only by chance that the deputy who overheard petitioner ask his wife to call Hunsader knew that Hunsader was a lawyer; petitioner could have no reasonable expectation that his call to his wife would be understood as an invocation of counsel. Even if petitioner had told his wife to call a lawyer, rather than just calling Hunsader by name, he would not have successfully invoked his right to counsel during interrogation because he did not say that he wanted the lawyer for that purpose. In order to invoke his right to counsel during an interrogation, a suspect must express "a desire for the assistance of an attorney in dealing with custodial interrogation." McNeil, 111 S.Ct. at 2209 (emphasis in original). Petitioner did not ask for a lawyer at all, much less ask for one to be present for interrogation.
 
 
 36
 Because petitioner did not invoke his right to counsel when he called his wife, and then waived the right when he was given his Miranda warnings, the interrogating officers were not required to inform him when the lawyer arrived at the station. Petitioner did not ask for a lawyer; therefore the lawyer's attempt to see him was unilateral. Moran v. Burbine, 475 U.S. at 420, makes clear that a suspect's right to a lawyer belongs to the suspect, and cannot be invoked by a lawyer. Id. at 424-25. Petitioner validly waived his right to the presence of counsel. There is no allegation that the waiver was coerced by physical or psychological pressure. Although knowledge that a lawyer was willing to see him "might have affected his decision to confess, ... [the Supreme Court has] never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Id. at 422. Petitioner offered his confessions after a valid waiver of his right to counsel, and those confessions were admissible at his trial.
 
 
 37
 Because the confessions constituted admissible evidence, it was not a violation of the federal constitution for the trial court to admit them at trial. Because the confessions were admissible, petitioner cannot argue that his testimony was impelled by the introduction of tainted evidence. Petitioner's conviction must stand; his petition for habeas corpus will be denied.
 
 ORDER
 
 38
 IT IS ORDERED that petitioner's petition for a writ of habeas corpus is DENIED on the grounds that the trial court did not err when it admitted his confessions into evidence at his trial and that his testimony was not impelled by the introduction of inadmissible evidence.
 
 
 39
 Entered this 27th day of January, 1992.
 
 
 
 [1]
 The term "impel" means to incite to action, or to induce, influence, or urge. Webster's New International Dictionary, 1248 (2d ed. 1957). Its meaning is similar to that of "compel": "compel is the stronger word, connoting force or coercion, with little or no volition on the part of the one compelled. Impel connotes persuasive urging, with some degree of volition on the part of the one impelled." Bryan A. Garner, A Dictionary of Modern Legal Usage 130 (1987). Thus it would seem that petitioner's claim is that his testimony at trial was compelled--that he had no choice but to testify--rather than impelled--that he was persuaded to do so. In Harrison v. United States, 392 U.S. 219 (1968), the seminal Supreme Court case concerning trial testimony tainted by illegally obtained and admitted confessions, Justice Stevens referred to such testimony as "impelled." Because the term has become part of the legal lexicon in cases such as this one, I will use it even though it is not precisely accurate
 
 
 [2]
 In his response to the petition for writ of habeas corpus, respondent denied that petitioner has exhausted his state court remedies to the extent that he is claiming that the state appellate court failed to follow appropriate appellate procedures. Because I have decided that the trial court did not err when it admitted petitioner's confessions at trial, and that therefore his testimony was not impelled by inadmissible confessions, any claim by petitioner that the state appellate court failed to follow appropriate procedures is moot. Therefore there is no state court remedy to exhaust on that procedural issue
 
 
 [3]
 At trial, petitioner claimed that he told the detectives he wanted to call Hunsader; the trial court disbelieved him
 
 
 [4]
 Petitioner claimed at trial that he told the interrogating detectives that he was exhausted and wanted rest, but the court believed the officer's testimony to the contrary
 
 
 [5]
 Petitioner claimed at trial that he told the detectives he wanted to call Hunsader, but the trial court disbelieved him. "It is well-settled law that a court of appeals does not stand in judgment of the credibility of witnesses. Rather that question is left to the sound discretion of the trier of fact." Quadrini v. Clusen, 864 F.2d 577 (7th Cir.1989) (citations omitted)